CASE NO. 25-11929

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## 𝔣𝔬𝔯 𝔱𝔥𝔢
# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

**CHARLES NEGY**

*Plaintiff-Appellee*

v.

**ALEXANDER CARTWRIGHT, ET AL**

*Defendants-Appellants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Civil Action No. 6:23-CV-00666
Honorable Carlos E. Mendoza, United States District Judge, presiding

**RESPONSE TO JURISDICTIONAL QUESTION BY
PLAINTIFF-APPELLEE CHARLES NEGY**

/s/ Joshua Adam Engel

Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
 (513) 445-9600
engel@engelandmartin.com

Samantha Harris (admission to be
 submitted)
ALLEN HARRIS PLLC
P.O. Box 673
Narberth, PA 19072
610-634-8258
sharris@allenharrislaw.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE

Appellee is not a subsidiary or affiliate of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome. Pursuant to 11th Cir. R. 26.1, Appellee Charles Negy respectfully provides the following list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, and other identifiable legal entities related to a party.

1.    Allen Harris Law, Attorneys for Plaintiff/Appellee;

2.    Barry, Richard L. Attorney for Defendants/Appellants;

3.    Butler, S. Kent, Former Defendant;

4.    Cartwright, Alexander, Defendant/Appellant;

5.    Dupras, Tosha, Defendant/Appellant;

6.    Engel, Joshua A., Attorney for Plaintiff/Appellee;

7.    Engel & Martin, LLC, Attorneys for Plaintiff/Appellee;

8.    Goldstein Law Partners, LLC, Attorneys for Plaintiff/Appellee;

9.    GrayRobinson, P.A., Attorneys for Defendants/Appellants;

10.    Harris, Samantha, Attorney for Plaintiff/Appellee;

11.    Hatcher-Bolin, Kristie, Attorney for Defendants/Appellants;

12.    Irick, Daniel C., United States Magistrate Judge, Middle District of Florida;

13.    Johnson, Michael, Defendant/Appellant;

ii

14.  Katz, Katherine W., Attorney for Defendants/Appellants;

15.  Lauten, Jr., Frederick James, Mediator;

16.  Mendoza, Carlos E., United States District Judge, Middle District of Florida;

17.  Myers, Nancy, Defendant/Appellant;

18.  Negy, Charles, Plaintiff/Appellee;

19.  Osborne, David R., Attorney for Plaintiff/Appellee;

20.  Spradley, Susan T., Former Attorney for Defendants/Appellants;

21.  University of Central Florida Board of Trustees, Former Defendant; and

22.  Zolty, Julie M., Attorney for Defendants/Appellants.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE ................................................................................................II

INTRODUCTION ........................................................................................1

STATEMENT OF THE CASE ....................................................................1

    A.   Factual Background .....................................................................1

    B.   Procedural Background................................................................6

POSITION OF APPELLEE: THIS APPEAL SHOULD BE DISMISSED..............8

    A.   Standard.......................................................................................8

    B.   This Court Lacks Interlocutory Jurisdiction Where Only Evidentiary Sufficiency Issues Are Appealed. .....................................9

    C.   The Only Issues In This Appeal Are Issues Of Evidentiary Sufficiency. .....................................................................10

    D.   If It Retains Jurisdiction, This Court May Not Consider Other Claims Beyond Qualified Immunity .....................................16

CONCLUSION .........................................................................................17

CERTIFICATE OF SERVICE.....................................................................17

## TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Burke County, Ga.*, 239 F.3d 1216 (11th Cir. 2001) ..........................................11

*Behrens v. Pelletier,* 516 U.S. 299 (1996) ...........................................................................9

*Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989) ........................................... 10, 11

*Chambliss v. Brevard Cty. Sheriff's Office*, 11th Cir. No. 23-12867, 2024 U.S. App. LEXIS 13630 (June 5, 2024) ............................................................................ 14, 16

*Cooks v. Kremler*, 11th Cir. No. 23-10657, 2023 U.S. App. LEXIS 26901 (Oct. 11, 2023) ...................................................................................................................... 9, 15

*Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996) ........................................................ 9, 10

*CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325 (11th Cir. 2000) .........................16

*English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023) ................................... 9, 10, 14

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .........................................................................10

*Hall v. Flournoy*, 975 F.3d 1269 (11th Cir. 2020) ..............................................................15

*Jackson v. City of Atlanta*, 97 F.4th 1343 (11th Cir.2024) ..................................................14

*McKee v. Montiel*, 11th Cir. No. 24-11828, 2025 U.S. App. LEXIS 11056 (May 8, 2025) ...................................................................................................................15

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ............................................................................8

*Murdock v. Montgomery Cty.*, 11th Cir. No. 21-13616, 2024 U.S. App. LEXIS 27670 (Oct. 31, 2024) ...................................................................................................15

*Roberts v. Spielman*, 643 F.3d 899 (11th Cir. 2011) ..........................................................10

*Shepard v. Sheriff of Wakulla Cty. Florida*, 11th Cir. No. 23-13611, 2025 U.S. App. LEXIS 15689 (June 25, 2025) ...................................................................................8

*Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000) ..................................................16

*Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1245-46 (11th Cir. 2012) ...................................................................................................................16

*Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995) .......................................................15

*United States v. Cody*, 998 F.3d 912 (11th Cir. 2021) ...........................................................8

Statutes and Rules

28 U.S.C. § 1291 ................................................................................................. 8, 16

Fed. R. Civ. P. 54(b) ..............................................................................................16

## INTRODUCTION

By letter dated July 2, 2025, this Court requested that the parties advise this Court of their position on whether the Court lacks jurisdiction over Defendants' appeal. For the reasons that follow, Plaintiff's position is that Defendants' appeal raises only questions of fact and should be dismissed for lack of jurisdiction.

## STATEMENT OF THE CASE

This case involves a claim that the State, through Defendant university administrators, sought to punish a professor for expressing certain viewpoints about matters of public concern on Twitter/X. The District Court held that qualified immunity was not available because a reasonable official should have known that terminating a governmental employee based on Twitter posts violated the First Amendment. The District Court said:

> A reasonable jury, however, could find that Defendants' motives were entirely unlawful. As explained above, there is evidence showing they were motivated by their distaste for Plaintiff and his views along with public pressure. But in the words of Noam Chomsky: "If we don't believe in freedom of expression for people we despise, we don't believe in it at all."

(Order, R.100, PageID#7966.)

## A.    FACTUAL BACKGROUND

Plaintiff-Appellee Charles Negy is an Associate Professor of Psychology at the University of Central Florida. Negy has taught at UCF since August 1998 and received tenure in 2001. He has won several teaching awards at UCF and, in the five years

preceding his termination, received an overall rating of "outstanding" on his annual evaluations. (Dupras Dep. Ex. 23, Doc.66, PageID#2634).

In March 2019, Negy joined the social media platform X, then known as Twitter, where he began regularly expressing controversial views.[1]  In early 2020, as America became engulfed in racial tension following the high-profile deaths of George Floyd, Breonna Taylor, and Ahmaud Arbery, Negy began tweeting about his views on race in America.  Negy's tweets on racial topics garnered significant attention and on June 3, 2020, that attention exploded into full-blown outrage by students, alumni, members of the public, and the media. On June 4, 2020, UCF's Assistant Vice President for Board Relations, Karen Monteleone, wrote UCF's Board of Trustees to say the following:

> A UCF professor's personal Twitter posts have gone viral and have received significant media attention. Overnight, there have been thousands of posts on social media and hundreds of individuals have emailed university offices, including more than 175 submissions to the Board of Trustees account.

(Exhibit 2, Doc.87-2, PageID#7432).

University officials rushed to publicly condemn Negy's tweets and promised a response. On June 4, 2020, Defendant Dupras (then the Interim Dean of the College of Sciences) sent an email to the entire College of Sciences in response to "many emails expressing concern and outrage regarding the Twitter content belonging to Dr. Charles Negy." (Dupras Dep. Ex. 1, Doc.66, PageID#2539-40).  She assured the community

---

[1] https://x.com/charlesnegy

that "UCF leadership is aware of these tweets and are actively working to address this situation. I cannot speak to next steps until they are finalized, but I'm reaching out to let you know that the administration is moving foward [sic]." (*Id.*) She encouraged the community to "speak up" and shared anonymous reporting resources. (*Id.*) The same day, Defendants Butler, Cartwright, and Johnson posted a statement to the UCF website entitled "Addressing Intolerance in our Community." (Cartwright Dep. Ex. 3, Doc.64, PageID#1278-79). The headline underneath the title stated: "Members of UCF's leadership urge current and former students to report discriminatory behavior they may have experienced from faculty and staff." (*Id.*) Defendants stated they were "disgusted" by Negy's "racist posts" and then made clear that while Negy had the right to his "personal beliefs" outside of the classroom, his classroom behavior could be actionable. The post instructed students on how to report "abusive or discriminatory" behavior by a faculty member, even anonymously. (*Id.*)

Individuals and groups wishing to see Negy fired for his tweets quickly seized on this invitation. The Office of Institutional Equity (OIE), headed by Defendant Myers, began to receive reports from multiple sources, with some allegations dating back as far as 2005. (Dupras Dep. Ex. 23, Doc.66, PageID#2819, 2624). Meanwhile, Defendants continued to insinuate that Negy's firing was just a matter of time. At a Virtual Student Forum held in June 2020, President Cartwright gave opening remarks in which he stated that while the original purpose of the forum had been to discuss UCF's response to the pandemic, they would instead be discussing "the offensive and hurtful Twitter posts

that Professor Charles Negy has shared on his personal page." (Cartwright Dep. Ex. 4, USB Drive, Doc.80). He told students: "I understand the anger it has caused many of our students, staff, and faculty. I promise you, this is a matter that has our full attention, and we have launched an inquiry to quickly, but fully, evaluate this situation." (*Id.*) Cartwright told students that "we are going to do everything we can, we will continue to push forward," but that "sometimes we have to go through a process, as frustrating as that process is to me." (Cartwright Dep. Ex. 5, USB Drive, Doc.80.) Defendant Butler released a video statement on UCF's official Twitter in which he stated, "We're trying to do the right thing. Sometimes that takes change and takes time … The #UCFFirehim I understand all of that but the fact of the matter is it's not going to happen overnight." (Doc.26 at ¶ 32, Doc.42 at ¶ 32).

OIE immediately began what it referred to as an "inquiry," which allowed it to defer providing notice to Negy since notice is not required until an "investigation" begins. During its "inquiry," OIE spoke with more than 115 individuals, and reached out to more than 300 others. (Dupras Dep. Ex. 23, Doc.66, PageID#2819-2843). After OIE had conducted nearly 90% of its interviews, Myers finally notified Negy that he was under investigation. (Myers Dep. Ex. 9, Doc.70, PageID#5217-20). This notice letter, however, included only a handful of the hundreds of allegations that Myers was investigating. (Myers Dep. Ex. 8, Doc.70, PageID#5211-16). Myers subsequently interrogated Negy for a total of nearly 8 hours, focusing on a litany of accusations spanning 15 years. (Myers Ans., Doc.46, ¶¶ 62-63).

On January 13, 2021, Myers issued her investigative report. (Dupras Dep. Ex. 23, Doc.66). Myers' report concluded that Negy had engaged in discriminatory harassment in the classroom, as well as numerous other offenses that were not part of the original set of allegations. To arrive at these conclusions, Myers manipulated the definition of harassment and other university policy definitions; applied a different standard to Negy than to other faculty she investigated; identified certain comments as examples of discriminatory harassment even when the recipient of the comment did not report experiencing *any* subjective offense; and performed inconsistent credibility assessments concerning disputed allegations in a way that almost always disfavored Negy.

Myers issued the final investigative report on January 13, 2021. (*Id.* at PageID#2618). A decision to terminate Negy was made at a group meeting in which Defendants Dupras, Johnson, and Myers all participated. (Johnson Dep. Tr., Doc.68, PageID#3213).[2] Negy grieved his termination through his union, the United Faculty of Florida. An arbitrator overturned the dismissal, issuing an opinion awarding Negy "full reinstatement, with tenure, and with all compensation and benefits fully restored to that effect as of the termination date." (Exhibit 10, Doc.87-10, PageID#7697-7707).

This litigation followed.

---

[2] There is some confusion about whether Cartwright also attended that meeting. Dupras testified that he did (Dupras Dep. Tr., Doc.66, PageID#2476), while others testified that he did not (Johnson Dep. Tr., Doc.68, PageID#3146)

**B.    Procedural Background**

Negy asserted claims under 42 U.S.C. § 1983 against the Individual Defendants (Butler, Cartwright, Johnson, Dupras, and Myers) and the UCF Board of Trustees.[3] (Amended Complaint, Doc.26.)  The District Court granted a motion to dismiss claims for injunctive relief and against the Board.  (Order, Doc.38.)  The District Court also held that Negy could not pursue a free speech claim based on alleged statements made in the classroom.  (Order, Doc38 at PageID#253 ("Insofar as Plaintiff's statements were made in the classroom pursuant to his official duties as a professor at UCF, the First Amendment affords him no protection.").)

Following discovery, the Individual Defendants moved for summary judgment. The District Court granted the motion by Butler, denied in full the motions from Cartwright, Dupras, and Johnson, and granted in part and denied in part the motion by Myers.  The District Court explained:

> Defendants maintain the evidence establishes they were solely motivated by lawful concerns regarding in-classroom harassment because the Investigative Report upon which they based the decision to fire Plaintiff specifically found the Twitter posts "were protected by the First Amendment and could not be the basis for a finding of misconduct or disciplinary action." (Doc.70 at 267–68). But Plaintiff has created an issue of fact as to whether Defendants' investigation was rigged from the start.

---

[3] The Individual Defendants were alleged to have acted under color of law and were sued in their individual capacities.  (Amended Complaint ¶¶ 9-13, Doc.26, PageID#118-119.)

(Order, Doc.100, PageID7966.)[4]

Defendants subsequently filed a notice of appeal. The issue identified in the Civil Appeal Statement is "Whether the District Court erred in denying Defendants/Appellants' summary judgment motion based on qualified immunity…" (Appellate Doc.12.)

---

[4] The District Court found that Myers was entitled to qualified immunity on claims related to in-class speech. The court said,

> Myers was not entitled to qualified immunity in Count I because the retaliation claim alleges Plaintiff was terminated after a pretextual investigation based on his tweets. But in Count II the free speech claim is about her findings that his in-class comments violated UCF policy. That distinction makes all the difference.

(Order, Doc.100, PageID7969.)

**POSITION OF APPELLEE: THIS APPEAL SHOULD BE DISMISSED**

Appellee's Position is that this Court lacks jurisdiction over this interlocutory appeal of denial of qualified immunity. The district court denied summary judgment based on qualified immunity because the evidence raised a factual question regarding whether the real reason for Appellee's termination was his protected speech. The District Court explained that "there is an issue of fact as to whether Plaintiff's protected speech was a substantial motivating factor in the decision to fire him…" (Order, Doc.100, PageID#7962.) In other words, the District Court denied summary judgment because of a genuine dispute of material fact. This Court, as a result, lacks interlocutory jurisdiction because the only issues appealed are evidentiary sufficiency issues. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'").

**A.     Standard**

This Court reviews *de novo* questions of appellate jurisdiction. *United States v. Cody*, 998 F.3d 912, 914 (11th Cir. 2021); *Shepard v. Sheriff of Wakulla Cty. Florida*, 11th Cir. No. 23-13611, 2025 U.S. App. LEXIS 15689, at *8 (June 25, 2025).

Pursuant to 28 U.S.C. § 1291, this Court generally only has jurisdiction over appeals from "final decisions of the district courts". The Supreme Court has held that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U. S. C. §

1291 notwithstanding the absence of a final judgment. This Court, accordingly, has interlocutory jurisdiction only over appeals from denials of qualified immunity based on "legal issues," such as "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023).

## B. This Court Lacks Interlocutory Jurisdiction Where Only Evidentiary Sufficiency Issues Are Appealed.

This Court has emphasized that "Whether we have interlocutory jurisdiction to review the denial of summary judgment on qualified immunity grounds depends on the type of issues involved in the appeal." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). This Court has interlocutory jurisdiction over legal issues that are the basis for a denial of summary judgment on qualified immunity grounds, but lacks jurisdiction where the only issues appealed are evidentiary sufficiency issues. *See Behrens v. Pelletier,* 516 U.S. 299, 313 (1996) (appellate courts do not have jurisdiction to review a denial of summary judgment "if what is at issue . . . is nothing more than whether the evidence could support a finding that particular conduct occurred"); *Cooks v. Kremler*, 11th Cir. No. 23-10657, 2023 U.S. App. LEXIS 26901, at *3 (Oct. 11, 2023) ("if a district court denies qualified immunity only because it holds that there are genuine issues of material fact in need of jury resolution, we are without jurisdiction to hear an appeal from that order"). This Court has, as a result, distinguished between interlocutory appeals of qualified immunity determinations that raise "legal issues," such as whether the legal

norms allegedly violated by the defendants were clearly established at the time of the challenged actions, and issues of "evidentiary sufficiency," such as whether the there is an issue of fact about the defendant's actions which, if they occurred, would violate clearly established law. *English*, 75 F.4th at 1155, *citing Cottrell*, 85 F.3d at 1484.[5]

## C.    The Only Issues In This Appeal Are Issues Of Evidentiary Sufficiency.

Overcoming a state official's qualified immunity defense ordinarily involves the consideration of whether the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, and whether the right violated was clearly established. *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011). The qualified immunity analysis in this case involved the application of the balancing test for government employee speech set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989).[6] The *Pickering* inquiry involves four considerations: (1) whether the speech involved a matter of public

---

[5] This Court in *English* explained that "[s]ome appeals raise questions of both law and fact." 75 F.4th at 1155.

[6] In *Pickering*, the Supreme Court deemed it essential that public employees "be able to speak out freely" on matters of public concern "without fear of retaliatory dismissal." 391 U.S. at 572. In *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006), the Court reaffirmed this principle, stating:

> The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.

547 U.S. at 417.

concern; (2) whether the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; (3) whether the speech played a substantial part in the adverse employment action; and (4) whether the employer would have reached the same decision even in the absence of the protected conduct. *Bryson*, 888 F.2d at 1565-66. This Court has observed that the first two considerations are questions of law while the final two considerations are "questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech." *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1219-20 (11th Cir. 2001).

Here, the legal issues under *Pickering* – whether the speech involved a matter of public concern and whether the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities – were not contested by Defendants in the summary judgment briefing. Specifically, Defendants did not contest that Negy's speech on Twitter/X involved a matter of public concern, nor at the summary judgment stage did they suggest that Negy's tweets meaningfully interfered with the performance of his duties or with the school's general operations. [7]

---

[7] Defendants had argued in the Motion to Dismiss that Plaintiff's statements caused "substantial" disruption on campus, impeding "UCF's interest in maintaining an efficient and non-disruptive work environment." (Motion, Doc.32, PageID#181.). The District Court rejected this argument, writing "Even if the speech caused protests and campus unrest, it does not necessarily equate to an inefficient functioning of the university's public service: delivering education to its students." (Order, Doc.38,

Defendants Cartwright, Dupras, and Johnson stated that they "challenge[d] only Plaintiff's ability to establish causation."  In doing so, Cartwright, Dupras, and Johnson argued that they terminated Plaintiff **solely** based on his allegedly inappropriate classroom conduct, not his protected speech.  (Motion, Doc.60, PageID#417-418.) Cartwright, Dupras, and Johnson never engaged with the first two steps of the *Pickering* analysis, conceding that Negy "cannot be disciplined for his protected speech" on Twitter/X.  (Motion, Doc.60, PageID#429.)  Instead, they argued that it is not clearly established that they could not terminate Plaintiff based allegations of classroom misconduct described in the Report, "which expressly excluded consideration of Plaintiff's protected speech."  (Motion, Doc.60, PageID#430.)  Myers filed a separate motion for summary judgment but, similarly, also never engaged with the first two steps of the *Pickering* analysis, choosing instead to argue the factual issue about whether she had a role in the termination decision.[8]   (Motion, Doc.61, PageID#451-453. See also Motion, Doc.61, PageID#445 (Footnote 10: "Defendant contends Plaintiff can establish neither that his speech was a 'substantial motivating factor in his termination'…").)

---

PageID#255.)  Defendants, for whatever reason, did not press this argument at the summary judgment stage.

[8] The District Court rejected Myers' argument about her role, finding that "Plaintiff has introduced sufficient evidence to create an issue of fact as to whether Meyers' investigation and recommendation was biased."  (Order, Doc.100, PageID#7957.)  The District Court did, however, accept Myers' arguments about classroom speech and academic freedom – issues not presented in this interlocutory appeal by Defendants.

The question before the District Court on summary judgment, then, was whether Negy's protected speech played a substantial part in the adverse action, and whether Defendants were able to show they would have made the same decision in the absence of the protected speech. In other words, Appellants argued the factual issue that they would be entitled to qualified immunity if the evidence establishes they were solely motivated by lawful concerns regarding in-classroom harassment. Appellants did **not** argue the legal issue that they would be entitled to qualified immunity even if Negy could establish that his tweets motivated Defendants' to terminate him. Myers centered this factual dispute:

> Plaintiff has no evidence that Dupras, Cartwright, or Johnson decided to terminate him based on his tweets. He cites nothing more than his own speculation to argue his protected speech on Twitter, rather than his own classroom conduct, was the reason for his termination.

(Doc.61, PageID#446.) The District Court disagreed with Appellants, concluding that Negy had presented sufficient evidence, on a summary judgment standard, that his protected speech on Twitter played a substantial part in the adverse actions taken against him, and Appellants had not met their burden of proving otherwise. (Order, Doc.100, PageID#7962-7963 ("Defendants contend that Plaintiff was fired for his non-protected in-classroom conduct, not his tweets. But the timing of Plaintiff's discipline creates an issue of fact.").)

This appeal from the denial of summary judgment does not raise the core qualified immunity legal question of whether Appellant's alleged conduct violated

13

clearly established constitutional law.  In this case, the District Court ruled against Appellants because of a genuine dispute of material fact concerning the application of the *Pickering* test:

> if a jury makes findings of fact in favor of Plaintiff, '[t]his is one of [those] extraordinary circumstances where *Pickering* balancing shows Defendants' conduct was unconstitutional."

(Doc. 100, PageID#7964, *quoting* Motion to Dismiss Order, Doc. 38.) This is the type of ruling that this Court lacks jurisdiction to review.  In *English*, this Court found that it lacked jurisdiction over an interlocutory appeal of a qualified immunity decision involving the use of force during a officer-involved shooting.  This Court dismissed the appeal because "the dispute [was] about what the evidence could prove at trial; it [was] not a dispute about principles of law." 75 F.4th at 1156.  As in *English,* Appellants may try to "cast their arguments as legal disputes," but this Court has been skeptical of such artful briefing.  *See*, *e.g.*, *Chambliss v. Brevard Cty. Sheriff's Office*, 11th Cir. No. 23-12867, 2024 U.S. App. LEXIS 13630, at *15 (June 5, 2024) ("While [appellant] dresses up his argument as if he were challenging a legal question, [appellant] really challenges only the sufficiency of [plaintiff's] evidence" at summary judgment stage).

This appeal does not raise questions about whether the law was clearly established since Appellants have never suggested that terminating Negy for his tweets, if true, would not violate clearly established law.[9]  Instead, the only issues on appeal are

---

[9] *Compare Jackson v. City of Atlanta*, 97 F.4th 1343, 1352 (11th Cir.2024) (court had jurisdiction over appeal that raised the issue of whether the law was clearly established

whether there are genuine issues of material fact about whether Negy's protected speech was a substantial motivating factor in Appellants' employment decision. Those questions are not enough to confer interlocutory jurisdiction over an appeal from the denial of qualified immunity under *English* and this Court's other related cases.[10]  In *Hall v. Flournoy*, 975 F.3d 1269, 1277 (11th Cir. 2020), this Court dismissed an appeal where the appellant "admit[ted], as she must, that" the conduct alleged "violates clearly established law."  This Court found that jurisdiction over an interlocutory qualified immunity appeal was lacking where, like in this case, "all we are left with is the factual review of what happened — was [plaintiff's] version of events right, or was [defendants]?"  Similarly, in *Cooks*, this Court dismissed an appeal for lack of jurisdiction where a defendant's arguments, like Appellants' arguments in their summary judgment briefing, were entirely "record based" and "simply disagreed that any reasonable jury could side with [plaintiff] on the facts."  2023 U.S. App. LEXIS 26901, at *4 (Oct. 11, 2023).  *See also McKee v. Montiel*, 11th Cir. No. 24-11828, 2025 U.S. App. LEXIS 11056, at *15 (May 8, 2025) (dismissing an interlocutory appeal where

---

[10] Appellants are not without a remedy.  This Court has observed that any "'qualified immunity defenses that do not result in summary judgment [for the defendants] before trial may be renewed at trial.'"  *Murdock v. Montgomery Cty.*, 11th Cir. No. 21-13616, 2024 U.S. App. LEXIS 27670, at *22-23 (Oct. 31, 2024), *quoting Swint v. City of Wadley*, 51 F.3d 988, 992 (11th Cir. 1995).

that defendant police officer lacked reasonable suspicion to stop a vehicle under particular facts of the case).

there was a genuine dispute of material fact about the underlying incident); *Chambliss*,

2024 U.S. App. LEXIS 13630, at \*14-15 (same).

## D.    If It Retains Jurisdiction, This Court May Not Consider Other Claims Beyond Qualified Immunity

Ordinarily, an appeal may be taken under 28 U.S.C. § 1291 only where the district

court has disposed of all claims against all parties.  However, an exception to the general

rule exists in qualified immunity cases: "A public official may file an interlocutory appeal

of the denial of qualified immunity where the disputed issue is whether the official's

conduct violated clearly established law." *Stanley v. City of Dalton*, 219 F.3d 1280, 1286

(11th Cir. 2000).  Accordingly, Appellee's position is that if the Court determines that

it has jurisdiction over this appeal, the Court should issue an Order clarifying that the

issues in this appeal be limited to whether Appellants' conduct violated clearly

established law and that the District Court erred in concluding otherwise.  To the extent

Appellants appeal from the denial of summary judgment as to other issues, such as the

substance of Negy's retaliation claims or whether Negy may claim punitive damages,

those issues are not final and appealable under 28 U.S.C. § 1291 because the District

Court has not adjudicated all claims against all parties or certified the issues for

immediate appeal under Rule 54(b). *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(b); *Supreme

Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1245-46 (11th Cir. 2012) (absent Rule 54(b)

certification, the adjudication of fewer than all of the claims is not a final decision); *CSX

Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000) (a final decision

ends the case on the merits and leaves the court with nothing to do but execute its

judgment).

## CONCLUSION

This interlocutory appeal should be dismissed for lack of jurisdiction.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation. This document contains 4022 words, excluding the portions listed in Fed R. App P. 32(f), as calculated by Microsoft Word.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)